(36 South. 898.)

No. 15,235.

LAWRENCE v. PENN MUT. LIFE INS. CO.*

(June 20, 1904.)

LIFE INSURANCE—PAYMENT OF PREMIUM—NOTE OF INSURED—RETURN OF POLICY.

1. Although the policy provides that it is not to take effect until the first premium shall actually have been paid, the company, in effect, waives that provision if it accepts a note instead of the cash. It (the policy) takes effect from the date of the acceptance of the note by the company. After having thus waived, it cannot forfeit the policy or treat it as null—at least, not without first calling on the maker and notifying the assured. Forfeitures are not favorites with courts.

2. A policy cannot be returned to the company without the consent of the assured and of the beneficiary.

3. The plaintiff, in writing the judgment, should have given credit to the defendant for the amount of the note.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Joseph H. Lawrence, administrator, against the Penn Mutual Life Insurance Company. Judgment for plaintiff. Defendant appeals. Modified.

*Rehearing denied June 30, 1904.

Andrews & Hakenyos (James J. McLoughlin, of counsel), for appellant. Hunter & Hunter, for appellee.

BREAUX, C. J. Payment is claimed on a life insurance policy amounting to $2,500 issued by the Penn Mutual Life Insurance Company, dated the 4th of March, 1902, to the late Albert O. Lawrence, through their local agent at Alexandria, La.

The first premium on this policy amounted to $62.95. Under the terms of the policy this premium was payable cash. One of the guarantied clauses of the policies reads as follows:

"This policy does not take effect until the first premium shall actually have been paid."

The policy further provides, among the warranty clauses, that, if premiums are not paid when due, the policy shall be subject to the nonforfeiture terms of the policy.

Instead of cash, as required by the policy, the assured executed his note, dated the 8th day of March, 1902, for the first premium, amounting to the sum above mentioned, payable in 90 days, and on the day following the policy was delivered to the assured.

The note was not paid at maturity. A short time previous to its maturity the assured fell very ill.

The note was placed in the Rapides Bank for collection, of which fact the assured received notice at the time while he was in his sick bed, a few days prior to his death. He was asked by his brother on the father's side (half-brother) if he wished to pay it, a moment after the witness mentioned that he had asked the sick man to let him, if he wanted him (the witness) to pay it, to which the sick assured replied: "No; let it alone." A day or two after, this half-brother spoke to the assured in words to lead him to believe that he had paid the note.

The local agent called to demand payment. He was informed that, in the delirious state in which his debtor was, it would serve no

purpose to go into the sick room. He left, and a few days thereafter he met his brother, before referred to, and, on his (the agent's) request, the policy was handed over to him. He returned it to the general agent. About this time he repaired to the bank in question, obtained the note, and forwarded it, also, to the general agent. It seems that the company knew all about the note and the deferred payment it represented.

The assured lived about twelve days after the policy had been delivered back to the company. He never was told that the policy had been returned, nor that the note had not been paid by his brother, who said to him that he had paid it. The brother testified that he surrendered the policy because he was under the impression that, the note not having been paid at maturity, the policy was forfeited; that it was after his brother's death that he was informed by the attorney of the succession that the policy had not been forfeited. He then called on the defendant, tendered the amount of the note representing the premium, and demanded the return of the policy. The general agent refused the tender, and declined to return the policy. This suit followed, and during the trial both the note and the policy were brought into court, and are now in evidence.

Defendant's contention is, substantially, that the policy never took effect; that, under terms of the policy, the note not having been paid at maturity, the policy was null; and that, if it did take effect at all, it was forfeited, and all recourse thereon lost, by its voluntary surrender to the company's agent.

Defendant makes a point of the fact that the brother who was instrumental in returning the policy is the plaintiff here as administrator.

The point renders it necessary for us to state, in justice to plaintiff, that the testimony shows that he is not the beneficiary of the policy.

There is no question of the fact that the assured had complied with all that was required of him by the defendant in order to enable him to obtain its policy.

The contract between assured and insurer was made complete by delivery of the policy for the note before mentioned.

The assured, owing to his severe illness at the time, was not called upon for payment of the note by the agent. Its maturity was mentioned by the brother, as before stated, and, although he had declined to let his brother pay the amount for him, he was informed a few days thereafter that the note had been settled, as the witness has it, and adds, "That is paid;" and we infer that the assured was under the impression from that time that it had been paid.

It does not appear that the surviving brother was the agent of the assured, or that the assured in any manner authorized him to return the policy. The act of the brother in returning the policy was entirely unauthorized and without the shadow of a right. He consulted no one, and delivered the policy at the request of the local agent.

We would not be justified in recognizing validity of a surrender in which one of the principals to a contract was entirely ignored. It was, as to him, the merest nullity. It takes the consent of the parties to the act to annul and set it aside. It cannot be done ex parte, or at the instance of one who is absolutely without authority. There was no voluntary surrender or any other surrender of it by the assured, and therefore no right accrued to defendant company to cancel it on that ground.

A policy cannot be delivered (returned to insurer) without the consent of the beneficiary. Here it is true that the assured was his own beneficiary. None the less the rule applies both to the assured and the beneficiary—that no one can surrender a policy without the consent of the parties who own the policy. Pilcher v. Ins. Co., 33 La. Ann. 322; Trager, Tutrix, v.

Ins. Co., 31 La. Ann. 235; Whitehead v. Ins. Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787; Schneider v. Ins. Co., 123 N. Y. 109, 25 N. E. 321, 20 Am. St. Rep. 727; Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370.

This brings us to a consideration of the question whether the policy ever took effect, because the first premium was not actually paid as required by the words of the policy. The terms were extended by the local agent, and this extension was approved by the defendant company, and we have seen that the note taken by this agent was afterwards accepted by the company.

It has been held that a note made and delivered under these circumstances is to be viewed in the light of a payment and a compliance with the condition required by the company's policy, as before stated.

We take it that if the agent of an insurance company, who is authorized to accept cash, accepts a note, he is, in the event of its nonpayment, liable for the note, and the note is considered as so much cash which should have been received by him for account of his company.

If the company takes it as its own, and approves his act, it is to be viewed in the light of having possession of a note which it accepted in payment of premium due on the policy. Unless it be stipulated in the policy, or in some way in the contract of insurance, that forfeiture is to be immediate in event the note is not paid, no such result can follow its nonpayment. The power to forfeit or cancel must be "nominated in the bond." Here no such consequence was stipulated.

In the case of Union Cent. Life Ins. Co. v. Taggart (Minn.) 56 N. W. 579, 43 Am. St. Rep. 474, the court held, regarding the condition of a policy, as follows: "It should not be valid or binding until the first premium had been paid," but in this policy no special mode of payment was laid down in the policy, and a note was made by the assured and accepted by the company—that, even in the

absence of any express agreement to that effect, the company must "be deemed to have accepted the note in payment of the premium, and the policy became binding, and constituted a valid consideration for the note." There was a warranty originally, which the company chose to waive by accepting the note which has been delivered to its agent.

After having thus, in effect, waived this clause, it could not, without any notice whatever to the assured, or without special demand, cancel the policy.

This note contains an additional consideration. The maker was to pay interest at the rate of 8 per cent., and attorney's fees in case of suit, which had at least a tendency to make it a separate and independent obligation from that which it was originally.

In a case before us there was a waiver of payment as stipulated in the policy. The court held the company bound by its waiver, and compelled it to comply with the contract, as if prepayment had been made as required by the stipulation of the policy. Sheldon v. Ins. Co., 25 Conn. 207, 65 Am. Dec. 565.

Forfeitures have never met with the special encouragement of courts. They must find support in law in a manner that leaves no doubts as to the right to their exercise. Gunther et al. v. Mutual Aid Association, 40 La. Ann. 777, 5 South. 65, 2 L. R. A. 118, 8 Am. St. Rep. 554.

A question regarding costs arises. Unquestionably, plaintiff owes the amount of the note in question and interest.

It should be paid or deducted from the amount due on the policy. There was a tender, which seems to have been overlooked in rendering the judgment of the district court. It is not mentioned in the judgment, although alleged in the pleadings.

The judgment must be amended by crediting the amount of this note.

For reasons assigned, the judgment appealed from is amended by deducting therefrom the amount of the note made, as men-

tioned in this decision, and interest stipulated thereon. With this amendment, the judgment is affirmed, at appellee's costs.