8224

MRS. JAMES A. FITZGERALD, ET AL.,  :  NO. 8324,

versus  :  COURT OF APPEAL,

BENEVOLENT KNIGHTS OF AMERICA OF LOUISIANA :  PARISH OF ORLEANS

:

WILLIAM A. BELL, JUDGE.

November 13, 1922.

Court of Appeal,
PARISH OF ORLEANS
FILED Nov 13/22
J. Stansbury

692

Mrs. James A. Fitzgerald, beneficiary under a certain benefit policy in the Grand Lodge Benevolent Knights of America of Louisiana, made defendant herein, brings suit against said defendant to recover the sum of $250.00, an amount which she claims has accrued to her as beneficiary on the life of her son, Henry M. Fitzgerald, who died in New Orleans on the 18th day of October, 1918, and who held a beneficiary certificate, No. 15049 La. in the defendant association, for the maximum sum of $500.00, said policy being dated February 7th, 1917. It provides that in the event of death after 12 and before 24 full months of consecutive membership, there shall be due half of the face value of the certificate, which in this case, is $250.00, the amount sued for.

Under the facts of this case, the pertinent clause of the policy or certificate reads as follows:

"The monthly rate payable by a member holding this Certificate, shall be the rate at the nearest year of age of entry, and is due and payable in advance on the first day of each month to the Secretary of the Lodge in which said member has his membership, or direct to the office of the Grand Lodge. Unless such monthly rate is paid on or before the first day of the month following that on which it is due and payable, the said member shall stand suspended from any and all benefits hereunder. The said member may be reinstated within sixty days by payment of amount due and furnishing certificate of good health."

It is alleged in plaintiff's petition that at the time of the death of her son, Henry M. Fitzgerald (the insured), he was a member in good standing in the defendant association, and had been so for 20 full consecutive months from and after the issuance of said certificate; that during the course of Fitzgerald's membership in the association, on many occasions he had made payment of various monthly rates or premiums due under the certificate of insurance sued upon long after the due date of said payment had passed, the due dates and the payment dates being set forth as follows:

June, 1917  Assessment $1.15 Paid on July 16th, 1917
July, 1917      "       1.15  "   "  Aug. 20th, 1917

698

| August, 1917 | Assessment | $1.15 | Paid | on | September | 14th,1917 |
|---|---|---|---|---|---|---|
| Sept., 1917 | " | 1.15 | " | " | November | 17th,1917 |
| Oct., 1917 | " | 1.15 | " | " | November | 30th,1917 |
| Nov., 1917 | " | 1.15 | " | " | December | 14th,1917 |
| Dec., 1917 | " | 1.15 | " | " | January | 10th,1918 |
| Jan., 1918 | " | 1.15 | " | " | March | 8th,1918 |
| Feb., 1918 | " | 1.15 | " | " | March | 8th,1918 |
| March, 1918 | " | 1.15 | " | " | April | 11th,1918 |
| April, 1918 | " | 1.15 | " | ". | May | 12th,1918 |
| May, 1918 | " | 1.15 | " | " | June | 14th,1918 |
| June, 1918 | " | 1.15 | " | " | August | 10th,1918 |
| July, 1918 | " | 1.15 | " | " | August | 10th,1918 |

It is further alleged that none of said payments as above detailed was accompanied by a certificate of good health, nor was demand made by the defendant corporation upon the insured for a certificate of good health at the time of any of said payments, and that in fact, no such certificate was furnished; that on October 15th, 1918, the insured caused to be paid to the subordinate Secretary of the Lodge the sum of $3.45, an amount sufficient to cover the monthly rates or premiums for August, September, and October of the year 1918; that at the time of said payment the insured was ill with cold and fever, and that the amount tendered was duly accepted by the Secretary of the Lodge and credit given the insured on his Member's Receipt Book, but that same was returned to him the next day by registered mail with the written statement that the Secretary of the Grand Lodge refused to accept the money. Annexed to and made part of the petition are four exhibits, among them the registered letter received by the insured from the Secretary of the Lodge of which he was a member. The letter reads as follows:

New Orleans, La., October 16/18.

Mr. Henry Fitzgerald:

Your dues and notice of illness received, and beg to state that I have notified the Grand Lodge of your illness, but beg to inform you that I cannot give a week's relief, as your relief only states when the secretary of your lodge is notified, and if I violate the rules of the order I am likely to get into trouble.

As you are now two months in arrears, I do not believe that the Grand Secretary will receive these dues and put you in good standing until you report well.

In view of these facts, I am unable to say whether you will get any relief, but will take up the matter with the Grand Lodge at once.

Trusting you will recover from your present illness shortly and that everything may be adjusted, I remain,

Yours fraternally,

(Signed) John J. Grasser,
Secretary.

The Grand Secretary refuses to take the money due to your being sick. The enclosed notice explains itself.

The Grand Lodge Secretary refuses to accept any money from you until you report well. After being well, and you desire to be reinstated, you may fill out the enclosed blank and return same to me, with dues payable including current month.

It is claimed in the petition that the refusal of the Secretary of the Grand Lodge to accept the sums paid was unwarranted and wholly without effect upon the membership of the insured in the association, and that by the association's systematic conduct in accepting payments of monthly dues long after due dates without exacting a certificate of good health in conformity with the paragraph of the certificate of insurance hereinabove quoted, that the association lost the right to suspend the insured from membership or to deny him the benefits accruing to him or his named beneficiary, the insured having been justified by the aforesaid conduct of the association to assume that he would continue in good standing although his payments had been delayed. Claiming estoppel against the association for these reasons, plaintiff, as beneficiary, sues for the amount above stated, alleging amicable demand upon the association without effect.

There is no contention as to the acceptance by the association of the delayed premiums or monthly payments as above stated.

695

The defendant answers by admitting the issuance of the certificate in question to the party named and for the benefit of the plaintiff herein, ~~and~~ avers that if any payments were made on the days alleged in the plaintiff's petition that same were made when the insured was in good health. Further answering, defendant alleges that the insured ceased to be a member in good standing on September 1st, 1918, because of the fact that his dues for the month of August had not been paid. It further alleges that on October 15th, the insured made no payment of dues to the Secretary of the Lodge, but that the sum of $3.45 was left at the residence of the Secretary with the wife of the Secretary by the mother of the insured, the beneficiary herein, and that as soon as the Secretary of the Lodge ascertained that Fitzgerald was ill, which was the next day thereafter, or the 16th of October, 1918, the amount was returned to him by the Secretary of the Lodge in which the insured held membership, and in fact never reached the Grand Lodge of the Benevolent Knights of America of Louisiana, the party made defendant herein.

It is further alleged that when the money was left at the residence of the Secretary of the Lodge, the insured's mother reported him as having been sick for several days, and that he never recovered from the illness from which he was suffering October 15th, but that he died from the effects thereof on October 18th, 1918.

At the trial of this cause, the defendant's counsel objected to the introduction of any evidence in support of plaintiff's claim on the ground that under the allegations of the petition, no cause of action was disclosed, the said allegations negativing any liability to the plaintiff under the terms of the policy made part of the petition. The Trial Court took time to consider the exception and objections so made, and ultimately overruled the same, as we think rightly.

The question involved in this case is one of law, the facts adduced being practically out of dispute or discussion, unless it be as to the fact of the insured's health

during the tender and acceptance of delayed payments or premiums. The record does not show whether the insured was in good health at the time of the acceptance by the association of the deferred payments, and we are of the opinion that such an issue is immaterial because of the undisputed waiver by the association of the conditions of the clause in the certificate as above quoted.

We find as a fact that the many defaults of the insured in prompt payment of premiums as they respectively fell due was in no instance but the last, to wit the payment, made on October 15th, 1918, in any way questioned by the association, nor did it attempt to suspend the insured member from any of the benefits set forth under the certificate, nor did it insist upon or cause to be furnished to it a certificate of good health from the insured as a condition to reinstatement because of the defaults made by him.

The testimony of the Grand Lodge Secretary shows the association to have been rather indifferent to the enforcement of the letter of the contract, and that it was the association's frequent custom to receive delayed payments without a subsequent forfeiture, and without the requirement of reinstatement by health certificate. On cross-examination this officer was examined in part as follows:

Q. Now, in your capacity as Grand Secretary, do you follow up these delinquent notices to discover when the application for reinstatement has been formally made, accompanied by health certificate in each case?

A. The health certificate is not required of a member who owes less than three months in arrears.

Q. Is that the rule of your Order?

A. It is.

Q. Will you show me that? Have you a copy of your rules?

A. No.

697

Q. Have you any in existence?

A. No, it is a matter of business administration in the office. It is an act of grace or a practice that inures to the benefit of the member.

Q. Not a part of the insurance contract?

A. No.

Q. The contract of insurance reads to the contrary?

A. Possibly it does.

Q. Don't you know it does?

A. Yes.

The record facts in this case as well as the testimony of the officers of the defendant association, clearly establish a course of conduct on the part of the defendant whereby it gave the insured the right to believe that delayed payments would not operate as a forfeiture of his insurance. The course of conduct as between the defendant and the insured both in respect to the place as well as the time of payment was undoubtedly variable, and the testimony above quoted further shows that the association had a custom not only observed in the instant case, but generally, to indulge its members. The fact that the deceased's mother notified the association at the moment of payment through such parties as were authorized to accept the payment, shows the good faith of the insured, and no intention of his nor of his mother, who made the payment, to conceal the fact of his illness, which ultimately resulted in his death. The case is free from fraud on both sides, and the authorities in this State as well as under the jurisprudence of the Supreme Court of the United States, establish an almost unbroken rule of estoppel against the assurer in cases of this nature.

In the case of Knickerbocker Life Insurance Company v. Norton, 24 L. Ed. 689, the Supreme Court of the United States pronounced against the forfeiture of a policy where conduct on the part of the insurer or its agent had established a waiver

698

of conditions of forfeiture stipulated in the policy. In this case the Court said in part:

> "Forfeitures are not favored in the law. They are often a means of great oppression and injustice and, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture upon such compensation being made.
>
> It is true we have held***** that in life insurance, time of payment is material, and cannot be extended by the courts against the assent of the company. But where such assent is given, the Court should be liberal in construing the transaction in favor of avoiding forfeiture.
> The case of lease is not without analogy to the present case. It is familiar law that when a lease has been forfeited any act of the landlord indicating a recognition of its continuance such as distraining for rent or accepting rent which accrued after the forfeiture, is deemed a waiver of the condition."

Again, in the case of New York Life Insurance Company v. Eggleston, 24 L. Ed. 841, the Supreme Court of the United States, reaffirming its conclusions in the above cited case said:

> "We have recently, in the case of Knickerbocker Life Insurance Co. v. Norton, shown that forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company which leads a party insured honestly to believe that by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture though it might be claimed under the express letter of the contract." See also Hartford Life v. Unsell, 144 U.S. 439 (36 L. Ed. 496).

The doctrine of estoppel enunciated in the above authorities of the Supreme Court cannot be strengthened by further comment. We find it reiterated in many authorities of the Supreme Court of Louisiana, particularly in the case of Lawrence v. Penn Mutual Insurance Company, 113 La. 87; Gunther v. N.O. Cotton Exchange, Mutual Aid Association, 40 Ann. 778; R.L. Gutter v. Mutual Reserve Fund, 52 Ann. 1733.

699

In the case of Kennedy v. Metropolitan Life Insurance Company, 116 La. p. 66, the Supreme Court of this State decided in recognizing forfeiture of a policy of life insurance, that as the contract was not to take effect unless the first premium should have been paid, the payment of that premium was in a measure found to be optional with the insured, and that it could not have been said to be past due on the day upon which the policy bore date. The doctrine of estoppel was declared inapplicable, although the Company, through the agent, had accepted a second premium after it had become due. The receipt in this particular case given for the first premium contained a stipulation that the acceptance by the Company at any time of a premium past due was to be taken as an act of grace and not a precedent or waiver of any of the policy's conditions. This authority relied on by counsel for defendant in the case now before us, does not in any way qualify the consistent jurisprudence of our State, for the reason that we do not consider the facts of the Kennedy cas. to be in any manner applicable to those now under consideration.

As was said by the Court itself in the Kennedy case: "Cases of this kind are determined mainly upon their facts." There was no stipulation in the settlements made by the insured that the defendant association either verbally or in writing, which would have carried with it a conclusion that the indulgence given the plaintiff was to be considered an act of grace by the Company and not a precedent or a waiver of any of the conditions or terms of insurance stipulated in the policy. Under the facts of this case, we are disposed to the view that the illness of the insured at the time of the last payment accepted by the association, could not have operated his suspension or prevented the effect of waiver already granted by the Company under its previous conduct, for under defendant's course of action, it distinctly approved and gave the plaintiff reason to believe that payments made after the due dates thereof would not cause a forfeiture of his insurance.

700

We think the ruling of the Trial Court is in conformity with the law, evidence and equity of this case, and that same should be affirmed. It is therefore ordered, adjudged and decreed that the judgment herein appealed from be, and the same is hereby affirmed, at defendant's cost in both courts.

JUDGMENT AFFIRMED.

November 13th, 1922.