ODOM, J.
 

 Plaintiff’s husband, Edward D. Finley, carried a $10,000 life insurance policy payable to her, in the defendant life insurance company. He died on April 30, 1929. The company refused to pay'the policy on the ground that it had expired because the insured had failed to pay the premiums, and this suit followed. From a judgment in favor of plaintiff, defendant appealed.
 

 This was an ordinary life policy dated December 9, 1924, but it ’ designated March 9, 1925, as the beginning of the first policy year, and the intervening period from the date of the policy to March 9, 1925, was covered by temporary term insurance.
 

 The policy contains the following pertinent stipulations:
 

 “Benefits.
 

 “This policy will participate at the end of the first policy year, and annually thereafter, in the distribution of the surplus funds of the company. At the option of the insured, dividends will be (1) paid in cash, or (2) applied in reduction of premiums, or (3) used to purchase participating paid-up additions, or (4) held by the company to accumulate subject to withdrawal on demand. * * *
 

 “If this policy becomes a claim by death, the dividend for the current year will be paid in cash in addition to the sum insured.
 

 “If any premium is not paid at the expiration of the grace period, the company will, if a written request therefor has been made by the insured and any assignee, automatically
 
 *480
 
 loan the amount of such premium less any dividend payable and charge the same as an indebtedness against the policy, bearing interest at the rate of six per cent per annum, if the tabular cash surrender value of the policy after the payment of such premium will be equal to the total indebtedness hereunder with interest thereon to the thirty-first day after the due date of the next premium payable hereunder, or to the next anniversary of the policy if no further premium will be payable ; or if said cash value shall be less than said total indebtedness and interest the company will loan to the insured the largest installment of premium shown by the policy for which the cash value of the policy (after the payment of such installment) less indebtedness and interest may be sufficient, and thereafter the premium on this policy shall be payable in like installments, unless a request for a change in due form shall be made; but in no case will the company loan to the insured an amount less than a quarterly installment of premium unless the balance of premium shall have been paid:
 
 provided, however, that any dividend accumulations hereunder shall first he utilized for the payment of such premium, and that while any such premium loan is outstanding dividends apportioned to the policy shall he applied to the reduction of said loan.
 
 The whole or any part of any such loan may be repaid at any time. * * * [Italics ours.]
 

 “Failure to pay a policy loan or premium loan, or to pay interest thereon, shall not avoid the policy unless the total indebtedness thereon including accrued interest shall equal or exceed the loan value of it at the time of such failure, nor until thirty-one days after notice has been mailed by the company to the last known address of the insured and of any assignee of record at the home office of the company. * * *
 

 “Non-Forfeiture Provisions.
 

 “Upon default in the payment of any premium after two full annual premiums have been paid hereon, this policy will be binding upon the company as participating paid-up insurance of a reduced amount unless participating extended term insurance shall have been selected by the insured as the automatic non-forfeiture option in case of default. * * *
 
 The extended term insurance shall continue the insurance in force from the due date of the premium in default for its original amount and .any outstanding paid-up additions less any indebtedness to the company hereon, hut without the right to loans.
 
 * * * [Italics ours.]”
 

 There is no dispute as to the facts pertinent to the issues here involved. In his application for the insurance, the insured requested automatic loans, and that the dividends due on the policy be applied to a reduction of the premiums, and selected extended term insurance as the nonforfeiture benefit. Under the terms of the policy, in case of default in the payment of premiums, the remaining cash value of the policy would be used to purchase extended term insurance at net single premium rates.
 

 The policy was written in accordance with the Massachusetts statute and in compliance with Act No. 88 of 1906 of this state.
 

 The premiums paid in cash by the insured, and the dividends apportioned to the policy and used to reduce the premiums, kept the policy alive and in force until December 9, 1928. On that date there fell due a quarterly premium of $68.50, which, if paid, would have kept the policy alive and in force until March 9, 1929. But it was not paid, and, under the terms of the policy, it lapsed on December 9, 1928.
 

 But on that date the policy had a total cash surrender value of $463.80. However, the
 
 *482
 
 insured owed the company at that time a premium loan of $432.97, leaving the net cash surrender value of the policy $30.33. This latter amount was sufficient to carry the policy as extended term insurance in the sum of $9,567 up to and including April 17, 1929.
 

 On February 26,1929, the company sent the insured a statement showing these facts and notified him that the policy would expire on April 17th of that year. The insured died on April 30th, thirteen days later.
 

 The statutes of Massachusetts (G. L. Mass, c. 175, § 140) and of this state (Act No. 88 of 1906) require that the surplus accruing upon a policy of insurance “shall be ascertained and distributed annually, and not otherwise.” In accordance with this provision of the law, there was written into the policy the following stipulation:
 

 “This policy will participate at the end of the first policy year, and annually thereafter, in the distribution of the surplus funds of the company.”
 

 In further compliance with these statutes, the company did ascertain the surplus earned by it in the year 1926, and by resolution its board of directors provided for its distribution. On January 25, 1928, it was resolved:
 

 “1. — That from the surplus funds of the Company a distribution or return of surplus be made to policyholders during the twelve months beginning with June, 1928, and ending with May, 1929; that such distribution be made on the ‘Contribution to Surplus’ plan according to a schedule to be prepared by the Actuary and approved by the President and Secretary; and that the total sum so distributed shall not exceed Fourteen Million Dollars ($14,000,000).
 

 “2. — That these returns of surplus are to be made on the anniversaries of the policy dates, on all policies in force, without reference to whether any premium that may be due at that time is- paid or not, except that in the case of dividends payable under twelve months Temporary Term Insurance, such dividends will be available only in reduction of the first premium or any installment thereof under the policy as renewed.
 

 “3. — That a policy which has been changed in kind or amount during the current policy year is to have its share of surplus determined by its status at the end of such year.
 

 “4. — That in the case of any policy becoming a claim by death during the current policy year, the dividend for the current year will be paid in addition to the proceeds of the-contract.”
 

 It is admitted by the company' that the pro rata share of this surplus allotted the policy held by the insured in this case, was'$15.79. -
 

 As already stated, the policy lapsed on December 9,1929, and that on that date, it had a, net cash surrender value of $30.33, which was sufficient to carry the policy as extended term insurance for $9,567 until April 17, 1929. In calculating the net cash surrender value of the policy, the company did not take into consideration the $15.79 which was due to the policy under its resolution of January 25, 1928, as its pro rata of the surplus distributed. The resolution provided that this surplus was to be distributed to the policyholders during the -twelve months beginning with June, 1928, and ending with May, 1929. The policy here involved lapsed between those' dates, and when it lapsed, as already stated, it had a cash surrender value of $463.30. But on that date the insured was due the company a premium loan of $432.97, which reduced the cash surrender value of it to $30.33. The policy provides that:
 

 
 *484
 
 “While any such premium loan is outstanding, the dividends apportioned to the policy shall be applied to the reduction of said loan.”
 

 Now if' the dividend apportioned to this policy by the company’s resolution, that is, the sum of $15.79, had been applied on December 8, 1928, when the policy lapsed, to the reduction of the insured’s premium loan, said loan would have been reduced from $432.97 to $417.18, and the policy would have had ariet cash surrender value of $46.12, which amount it is admitted, was sufficient to keep the policy alive and extend it beyond the date of insured’s death. In other words, if the insured was entitled to credit for this $15.79 on December 8, 1928, then the policy was in force and effect when he died.
 

 The company’s resolution of January 25, 1929, providing for “a distribution or return of surplus” to the policyholders, sets out, in paragraph 2, “that these returns of surplus are to be made on the anniversaries of the policy dates, on all policies in force.”
 

 The anniversary date of the policy here involved was March 9th, on which date the company was due to pay this dividend of $15.-79.
 

 The respective contentions of plaintiff and defendant are these: The plaintiff contends that the insured was entitled to credit for this amount on December 8,1928, and, as has been shown, if he had been given the credit on that date, the policy was in force when he died.
 

 The'defendant,insurance company contends, on the contrary, that “the dividend provided by'the resolution was not due to the policy until its forthcoming anniversary, March 9, 1929, and therefore could not be used as contended by1 the beneficiary to increase the net cash surrender valué at the date of the prior lapse on December 29, 1928.”
 

 The contention made by the insurance company is not well founded. The surplus funds distributed by the company by its resolution in January, 1928, had already been earned." That surplus was due the policyholders under the law. When the amount of it was ascertained and a resolution adopted providing for its distribution and payment, the amount apportioned to the policies, according to the schedule made by the actuary, became a debt due by the company to the policyholders. The resolution provided that these amounts should be paid during .the year beginning with June, 1928, and ending with May, 1929. The effect of the resolution was to set aside a sum not exceeding $14,000,000 to the credit of the policyholders, each to share therein according to proper schedule of apportionment. The adoption of the resolution was the declaration of a dividend. The company therefore held in its hands these amounts to the credit of the policyholders. It was indebted unto them in these amounts, and the fact that the payments were to be made on future dates, that is, on the anniversary dates of the policies, did not change the status or relationship of debtor and creditor between the company and its policyholders, once that relationship was created by the resolution. The defendant company became a debtor to each and every one of its policyholders the moment the resolution providing for the distribution of the surplus became effective in an amount ascertained by the actuary. It admits that the amount of its indebtedness to the insured in this case by virtue of said distribution was $15.79, and on May 1, 1929, made out and tendered to the beneficiary a check for that amount. But it contends that it did not become indebted unto the insured until the time came for the payment to be made. We do not subscribe to that view. "
 

 
 *486
 
 “The declaration of a dividend creates a debt against the corporation in fav.or of each stockholder to the amount due him as his pro rata share, and this is true although the dividend is made payable at a future date, or ‘at the pleasure of the company’ or ‘such time as may be denoted' by the' Board.’ ” 14 C. J., § 1238, p. 815. •
 

 “The declaration of the dividend- set's apart from the profits of the corporation a sum which is to be paid to the stockholders in proportion to their shares, and * * * creates a debt due from the corporation to each shareholder, resulting in the relation of debt- or and creditor.” Staats v. Biograph Co. (C. C. A.) 236 F. 454, 458, L.
 
 R.
 
 A. 1917B, 728.
 

 In the case of Raynolds v. Diamond Mills Paper Company, 69 N. J. Eq. 209, 60 A. 941, it was held that the effect of the declaration of a dividend is at once the establishment of a debt due from the corporation to each stockholder.
 

 It has been held that the rights of members of a mutual insurance company in the distribution of dividends are analogous to those of stockholders in an ordinary corporation. Zinn v. Germantown Farmers’ Mutual Insurance Company, 132 Wis. 86, 111 N. W. 1107.
 

 The act of the company in distributing the earned surplus was tantamount to the declaration' of a dividend. That act, that declaration, created a debt against the company in favor of the policyholders. From the moment the resolution took effect, there existed the relationship of debtor and creditor between them, regardless of the fact that the amount was to be paid at a later date. When this policy lapsed, the insured was due the company a premium loan! At that moment, the company.was indebted unto him- for,the dividend which it had declared in his favor; amounting to $15.79, and the premium Toan was automatically reduced by that amount.
 

 ■ That amount had been apportioned to■ this policy, which provides in precise terms that, “while any such premium loan is outstanding, dividends apportioned to the policy shall be applied to the reduction of said loan.” The dividend was apportioned as of date June 1, 1928.
 

 The settled jurisprudence is that the provisions of an insurance contract are to be strongly construed against the insurer. In the ease of Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 91, 68 L. Ed. 235, 31 A. L. R. 102, Justice Sutherland, the organ of the court said: “The rule is settled that ih case of ambiguity that construction of the policy will be adopted which is most favorable to the insured.”
 

 See Massachusetts Protective Association v. Ferguson, 168 La. 271, 121 So. 863; Corporation of Roman Catholic Church v. Royal Insurance Co., 158 La. 601, 104 So. 383; Mutual Life Ins. Co. of New York v. New, 125 La. 41, 51 So. 61, 27 L. R. A. (N. S.) 431, 136 Am. St. Rep. 326; McMaster v. New York Life Ins. Co., 183. U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Lawrence v. Penn Mutual Life Ins. Co., 113 La. 87, 36 So. 898, 1 Ann. Cas. 965.
 

 Counsel for the insurance company, in their brief say:
 

 “We will concede, without the necessity of citation, -the axiomatic principle that it is the duty of the insurer to apply-, any credits ..to a policy in its hands to the -benefit of- the policy, so as to keep it in force as originally •issued as long as. possible, and -thereafter, to maintain it in its converted form, for the
 
 *488
 
 greatest period of time that these credits will provide.”
 

 It was the duty of the insurer in this case to credit the amount of the surplus apportioned to the policy or the dividends declared on the policy loan due by the insured. That would have kept the policy in force to a date subsequent to the date on which the insured died. . .
 

 Counsel for defendant have directed our attention to that part of the statutes declaring “that the proportion of the surplus accruing upon said policy shall be ascertained and distributed annually and not otherwise,” and to the following provision in the policy:
 

 “This policy will participate at the end of the first policy year, and annually thereafter, in the distribution of the surplus funds of the .company.”
 

 This does not mean, as contended by them, that under no circumstances could the insured get 'the benefit of the apportioned surplus, this dividend, except at the end of the policy year. Normally the policy would participate in the surplus only at the end of the policy year. But under certain contingencies it 'would participate before the end of the year. For instance, it is provided that, “if this policy becomes a claim by death, the .dividend for the current year will be paid'in cash in addition to the sum insured.” It would hardly be contended that, if the insured had died six months before the end of the policy year, the company would have postponed the payment of this dividend until the ■end of the policy year.
 

 iThe lower Court awarded plaintiff the full amount of the policy, less the amount of the insured’s indebtedness for premium loans. •That judgment is correct, and is accordingly affirmed, with all costs.