ODOM, Justice.
 

 This case has been before us twice.before, once in 1936, when for reasons assigned
 
 *329
 
 we remanded it for retrial (Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711), and again in November, 1937, when it was remanded again for trial de novo. 188 La. 421, 177 So. 259.
 

 After the case was remanded the second time, it was tried de novo, and on May 9, 1939, judgment was rendered in favor of defendant, dismissing plaintiff’s suit at her cost. She appealed.
 

 This suit is for $2,500, the face amount c¡f a life insurance policy issued on March 25, 1927, by the defendant company to William E. Dreher, with his wife, Mrs. Myrtle D. Dreher, as beneficiary.
 

 The insured lost his life by drowning on June 17, 1933. The plaintiff, as beneficiary under the policy, brought suit against the company on June 16,1934. She alleged that all premiums due on the policy up to the date of the insured’s death had been paid and that therefore the policy was in full force and effect when the insured died.
 

 At the first trial plaintiff testified that the premiums had been paid. Counsel who then represented plaintiff brought the suit and tried the case on the theory that the policy was in full force and effect because the premiums had been paid by the insured. At that trial judgment was rendered against defendant by default, and defendant appealed.
 

 When the case was remanded for retrial, the defense urged by the insurance company was that the premium due on the policy on March 25, 1933, about three months prior to the insured’s death, had not been paid, and that the policy had lapsed.
 

 At the second and third trials plaintiff was represented by counsel other than the one who drew the petition and represented her at the first trial. Counsel who represent her now have abondoned entirely the original theory that the policy was in force because the premium due on March 25, 1933, had been paid. Their contention now is that, admitting that the premium due March 25, 1933, was not paid, still the policy was in force when the insured died on June 17, 1933, because, at the time the policy is alleged to have lapsed for non-payment of premiums, the insurance company had in its hands, and was due the insured, the sum of $25.52, exclusive of all indebtedness to the company, the said amount being an earned or accured policy dividend, which amount was more than sufficient to carry the policy as extended term insurance for a period beyond the date of insured’s death..
 

 The defendant admits that the policy participated in the profits of the company. The documents which it filed in evidence, as well as the testimony of Mr. F. G. Ray, its actuary and secretary, show that the insured had on sundry dates been given credit for dividends earned by the policy. On more than one occasion he borrowed on the policy from the company an amount up to its loan value. The defendant .denies that there was any amount due as a dividend at the time the policy lapsed. This defence was upheld by two trial judges, and plaintiff’s suit was dismissed by each.
 

 If the theory now advanced by counsel for plaintiff is supported by the record, the judgment appealed from is erroneous and must be reversed. If there was an earned
 
 *331
 
 and declared dividend due on the policy at the time of its lapse for non-payment of the premium which fell due on March 25, 1933, the insurance company was at that time indebted to the insured in the amount of the dividend. Under no theory could the company withhold from the insured the amount due him. If the policy was entitled to a dividend credit at the time the premium was due .to be paid in March, 1933, the amount of the dividend should have been paid in cash to the insured or used by the company to purchase extended insurance at net single premium rates.
 

 The settled jurisprudence here and elsewhere is that it is the duty of the insurer, to use any credits.due on a participating policy for the benefit of the policy so as to keep it in force as originally issued as long as possible. Finley v. Massachusetts Mut. Life Ins. Co., 172 La. 477, 134 So. 399, and authorities there cited.
 

 According to the record brought up the insured in this case had received' credit for, and had gotten the benefit of, all dividends earned by the policy up to March 25, 1933.
 

 Through a lohn and settlement transaction agreed upon and consummated on June 24, 1932, all premiums on the policy up to March 25, 1933, were paid. In that transaction the insured was given credit for all the dividends accruing on the policy up to the latter date.
 

 On June 19, 1932, the insured wrote the company as follows:
 

 “Dear Sirs—
 

 . “Would like to borrow on policy No. 702. Let me know as soon as possible as I am in need of some money at once. What amount can be borrowed?
 

 “Yours truly
 

 “W. E. Dreher.
 

 “Amite La.”
 

 In reply to this letter, the company wrote Mr. Dreher on June 24 that it had worked out a plan under which it could make to him a cash loan of $71.84, as per the statement enclosed. The plan was this: The insured was to execute a new note for $310, due March 25, 1933, bearing interest at 6 per cent from date until maturity, this being the loan value of the policy at the end of the sixth year, March 25, 1933. The company would then give him credit for $310, the amount of the new note, and credit for $7.54, the amount of the unearned interest on the old note for $167.50, which was to be taken up by the new loan, and credit also for $18.46, a dividend credit' as per_ the statement enclosed. This would give him a total credit of $336. From this amount was to be deducted $13.35, the amount of the interest on the new note at 6 per cent from its date to March 25, 1933; also $167.50, the amount of the old note, and also $83.31, the amount of the premium due on the policy from June 25, 1932, to March 25, 1933, which was three-fourths of the annual premium of $112.23, the premium having been previously paid to June 25, 1932. • The total of these deductions was $264.16. Subtracting the total of these deductions from the total credit due the insured under this plan leaves a balance of $71.84, which amount the company proposed to pay the insured. The amount of this payment was
 
 *333
 
 also to be deducted from the insured’s total credit.
 

 The insured accepted the company’s proposition, and executed his note for $310, dated June 24, 1932, and made due and payable on March 25, 1933. Upon receipt of this note by the company, it forwarded to the insured its check for $71.84.
 

 The transaction completed, the relationship which then existed between the company and the insured was this: The company had loaned the insured on the policy all he was entitled to borrow, and he had received credit for all the dividends accruing up to March 25, 1933, and all premiums on the policy were paid up to that date. The policy had been delivered to the company as security for the loan; so that, unless the annual premium, or at least a quarter annual premium of $29.75, was paid by March 25, 1933, the anniversary date of the policy, or within the grace period, which was 30 days, and if the note representing the loan on the policy remained unpaid, the policy would lapse. Although the insured was notified by the company on February 25, 1933, that his note would fall due and that a premium on the policy would be due on March 25, he paid neither the note nor the premium and later acknowledged his inability to do so, as shown by his letter which is in the record.
 

 We have stated that the insured got credit for, and the benefit of, the dividends earned by the policy up to March 25, 1933. These dividends were not, however, paid to the insured direct, but were paid by the appli- • cation of them to the purchase of stock in the Guaranty Bond and Finance Company, Inc. The application for the policy which Mr. Dreher signed on March 14, 1927, contains the following stipulation:
 

 “Reservation for Stock
 

 “As a part of this application, and as of the same date thereof, I hereby authorize the Guaranty Income Life Insurance Company to hold for my account all cash dividends that may be annually ascertained and distributed by reason of the policy, or policies, for which I am hereby applying, until the accumulated amount thereof, plus 3%% per annum interest, shall be sufficient to pay for 5 shares of Preferred and
 
 2Yi
 
 shares of Common Stock in the Guaranty Bond and Finance Company, Inc., which have been, or will be, set aside by the said Guaranty Bond and Finance Company, Inc., to satisfy this contract; and when the said accumulated amount suffices as aforesaid, then the Guaranty Income Life Insurance Company is directed to pay over the same to the said Guaranty Bond and Finance Company, Inc., for me and in my name, and have issued to me the said stock.”
 

 On June 25, 1932, when the company sent to Mr. Dreher a statement of the loan plan, as outlined hereinabove, it enclosed a statement of his dividend account, which showed:
 

 Dividend account for $100.00 of stock Dr. ' Cr.
 

 1st dividend for the year
 

 March 25, 1929, to ’• March 25, 1930....... $ 23.18
 

 2nd dividend for the year March 25, 1930, to March 25, 1931....... 24.92
 

 
 *335
 
 3rd dividend for the year March 25, 1931, to March 25, 1932....... $24.92
 

 Extra dividend for the ' year March 25, 1931, to March 25, 1932....... , 12.46
 

 4th dividend for the year March 25, 1932, to March 25, 1933....... 25.52
 

 Stock to be issued dated July 1, 1932........... $100.00
 

 Accrued interest to July 1, 1932 .............. 7.46
 

 Dividend credits applied to premium June 25, 1932 ................ 18.46
 

 Totals ............. $118.46 $118.46
 

 It will be noted that the insured was given credit for $25.52 as the fourth dividend for the year ending March 25, 1933. This credit or dividend was arrived at by estimating the accumulations on the policy for the year ending March 25, 1933. Mr. Ray testified that the dividend for the year did not exceed that amount.
 

 It is thus seen that the insured had credits for dividends and accrued interest up to March 25, 1933, amounting to $118.46, and that the insurance company used-$100 of said amount to purchase stock in the Guaranty Bond and Finance Company, Inc., as directed by the insured in his application for the policy. For the balance, $18.46, the insured received credit in the loan transaction outlined hereinabove. This credit appears in the statement accompanying the loan plan.
 

 These dividends were retained by the insurance company until a sufficient amount had accumulated to purchase five shares of preferred and two and one-half shares of common stock in the finance company, when the amount was turned over to the finance company, which company on July 1, 1932, issued and sent to Mr. Dreher the stock. Mr. Dreher was paid a semi-annual dividend on the stock on January 1, 1933.
 

 After the lapse of the policy, a representative of the company called on Mr. Dreher, suggesting that he make application for reinstatement under a plan worked out and submitted by the company’s actuary. Under the rules of the company the policy could not be reinstated unless the premium due on March 25, 1933, was paid. Upon payment of one year’s premium, the policy would remain in force until the end of its seventh year — to March 25, 1934 — , when its loan value would be $385. The company, being admittedly anxious to get the policy reinstated, proposed to take the insured’s note for $385, provided the insured would pay the sum of $33.35 in cash. This amount in cash, added to the amount of the note, together with an estimated dividend of $25.52 for the policy year March 25, 1933, to March 25, 1934, would give the insured a credit of $443.77. From this amount the company proposed to deduct $21.54 interest on the note, plus $310. the amount of the old note, plus $112.23, the annual premium due on March 25, 1933, or a total deduction of $443.77.
 

 Mr. Dreher signed an application for reinstatement and sent it to the company. The application is dated May 16, 1933. It
 
 *337
 
 shows on its face that the policy had lapsed. But he was unable to make the necessary cash payment, and on June 10, 1933, wrote the company as follows:
 

 “Guaranty Income Life Ins. Co.
 

 “Baton Rouge
 

 “La.
 

 “Gentlemen-
 

 “In regards to policy No. 702 it will be impossible for me to meet the requirements as stated because it is impossible for me to get money. I am out of work and looks as though I cannot obtain work at present that is why I couldn’t meet premium when it was due.
 

 “Am sorry I cannot keep up policy but if I have any dividend coniing to me please send it as my family is in need of same.
 

 “Thanking you for the kindness shown me while in your company and if I ever get work will be glad to join your company.
 

 “Yours truly.
 

 “W. E. Dreher.”
 

 All this is admitted by counsel for plaintiff, but they argue that the insurance company had no right to make such disposition of ,the dividends. The answer is that such disposition was specifically authorized by the insured. Moreover, the transaction was ratified by the insured when he accepted the stock and accepted the dividend payment. He knew before the stock was issued that the insurance company intended to make such disposition of his dividends. That was shown by the statement sent him about. June 25, and the stock was not issued and forwarded until July 1. He -made no complaint then, nor did he make any later.
 

 It is further argued by counsel for plaintiff that the prior election of the-insured to have the dividends thus applied was contrary to the provisions of Act 88 of 1906, and therefore illegal and not binding. That act provides that the share of surplus apportioned to policies of this kind
 
 “shall, at the option of the owner of the policy,
 
 be payable in cash, or shall be applicable to the payment of any premium or premiums upon said policy or to the purchase of a paid-up addition thereto or shall be permitted to accumulate to the credit of the policy at such rate of interest as shall be allowed by the company”. (Italics are the writer’s.) This provision of the act contemplates that the election of the insured as to the manner in which the dividends are to be paid shall be made after the policy is issued. The act goes on further to provide that the insurance company may require the owner of the policy to elect the manner in which said dividends shall be applied by mailing a written notice of the amount of the said dividend and the options available, and “in case the owner shall fail to notify the company in writing of his election within three months after the date of the mailing of said notice, the surplus shall be applied by the company to the purchase of a paid-up addition to the sum insured”. The insurer cannot compel the insured to make the election. The insured may elect after notice but is not required to do so. If he makes no election, the surplus or dividends shall be applied by the company in the manner provided by the act.
 

 .. We do not construe this act to mean that an applicant for a policy of insurance is
 
 *339
 
 prohibited'from making an election as to the manner in which dividends accruing to a policy, if issued, shall be used. The legislature did not intend to take from an insured his right to contract with reference to the' payment of the dividends which might accrue to the policy.
 
 In
 
 this case Mr. Dreher ipade a prior election authorizing the company to use his dividends in a certain way. This election was unquestionably binding upon him.
 

 Counsel for plaintiff argue that the notices sent to the insured by the company, showing that premiums would be due on the dates mentioned, and notices of the lapse of the policy were defective and not in strict compliance with the statute, and for that reason the company had no right to declare the policy forfeited. They further argue that Mr. Dreher did not sign the authorization under the heading “Reservation for Stock”.
 

 There is no merit in the argument that the company had no right to declare the policy forfeited,, even if it be conceded that there was irregularity in the manner of giving notice, for the reason that it is perfectly clear that.Mr. Dreher received the notices, made no complaint, and understood that the policy lapsed for non-payment of premiums: The purpose of giving notice is to prevent the lapse of policies due to oversight on the part of the insured. In this connection, the lapse of the policy was not'due to an oversight on the part of the insured to pay the premium, but was due to his inability to make the payments, which inability he acknowledged by letter. Manifestly, the insured suffered no injury because of the alleged irregularities.
 

 As to his failure to sign the authorization, the application for the policy shows that, while he did not sign his name under that particular provision, yet he did sign immediately opposite that provision. But, even if it be conceded that there was some irregularity about the signing, it is perfectly clear that he understood that the company was authorized to make use of the dividends as it did, because he received a statement showing that his dividends had been used for the purchase of stock in the finance company, made no complaint, and later accepted the stock which was issued to him, and accepted one dividend payment on the stock. It is reasonable to assume that, if he did not intend originally to sign such authorization, he would have complained. ' Ratification and acquiescence have cured the alleged irregularities.
 

 There was offered in evidence by the plaintiff as Exhibit 5 and also by defendant as Exhibit A a “dividend notice”, indicating that, if the insured should pay the premium due on the policy on March 25, 1933, he would be entitled to a dividend of $25,52. This furnishes a basis for plaintiff’s argument that the policy did not lapse because the insured was entitled to a credit for this amount, which was sufficient to carry the policy for a period beyond the date of the insured’s death.
 

 In view of the fact that statements rendered the insured by the company show that he was given credit for all dividends accruing up to March 25, 1933, it is evident
 
 *341
 
 that this dividend notice had reference to an estimated dividend which would be due on March 25, 1934, if the premium on the policy due on March 25, 1933, was paid. As we have stated, the company proposed to give the insured credit for such a dividend provided.the policy was reinstated as per the plan suggested.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 FOURNET, J., concurs in the decree.
 

 PONDER, J., recused.