(No. 24388.

SARAH E. COONS, Appellee, *vs.* THE HOME LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

*Opinion filed February 16, 1938.*

WINSTON, STRAWN & SHAW, (BENJAMIN R. C. LOW, GEORGE B. CHRISTENSEN, and GERARD E. GRASHORN, of counsel,) for appellant.

NICHOLAS J. MASCHA, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The Appellate Court for the First District affirmed the judgment of the municipal court of Chicago for $3614 in favor of appellee, beneficiary in an insurance policy issued by appellant on the life of appellee's husband, William P. Coons. The trial was by the court without a jury. The cause is here on leave granted to appeal. The question is whether or not the policy was in force at the time of the death of the insured.

The policy was denominated an ordinary life policy. It was issued March 27, 1914, in the face amount of $5000. The premiums were payable quarterly, in advance, on the twenty-fifth day of June, September, December and March, in the sum of $43.15, each.

Other pertinent provisions of the policy are:

(a) The payment of a premium or installment thereof did not maintain the policy in force beyond the due date of the next premium or installment.

(b) A grace period of one month (but not less than thirty days) for the payment of each premium after the first.

(c) "This policy shall participate in the surplus of the company and the proportion of the divisible surplus accruing hereon shall be ascertained and distributed annually by the company."

(d) At the option of the insured "such dividends on the 25th day of March of each year" might be: (1) Paid in cash; (2) applied toward premium; (3) applied to purchase paid-up additions; or (4) left to accumulate at interest.

(e) "After this policy shall have been in force three full years, the owner, within three months after any default in payment of pre-

mium, but not later, may elect (a) to surrender the policy for its cash value; or (b) to have the insurance continued in force as term insurance from the date of such default [non-participating] * * * for an amount equal to the face amount of this policy * * * less any indebtedness to the company hereon; or (c) to purchase participating paid-up life insurance."

(f) "Automatic extended insurance. On default in the payment of any premium hereon the insurance shall be continued, without action on the part of the insured, as paid-up non-participating term insurance as provided in option (b) aforesaid if the insured shall not within three months after such default surrender this policy * * * for its cash value, or paid-up insurance."

(g) "In lieu of automatic extended insurance the company will, on receipt of satisfactory request from the owner * * * advance the amount of any unpaid premium as a lien on the policy with interest in advance at the rate of six per cent, * * * if, after deducting from the cash value all existing indebtedness and interest, * * * the balance shall equal or exceed the overdue premium with interest. Subsequent premiums will in like manner be advanced from time to time * * * until the cash value * * * is not sufficient to cover the accumulated indebtedness and advance the premium. If the cash value * * * be * * * insufficient to pay an entire quarterly premium any excess of the cash value hereon over the indebtedness shall be used to purchase extended term insurance as aforesaid."

(h) "Table of minimum loan and surrender values. The figures in the following table give the minimum values available at the end of complete policy years if there be no indebtedness against the policy and provided premiums have been paid in full for the number of years stated. These values will be increased on account of any dividends which have been allotted and have not been withdrawn in cash up to the date of surrender or loan. If there be any indebtedness to the company the figures will be modified as hereinbefore provided."

The premiums were regularly paid prior to September 28, 1923. On that day the insured obtained from the insurance company a loan of $838 on the policy. The loan was never paid. Thereafter, up to September 25, 1932, the premiums totalled $1294.50. During that period the insured made some payments on account and paid some

premiums, in all aggregating $309.53. All other premiums were advanced by the company under the automatic lien provision of the policy. This amounted, in effect, to paying them out of the equity in the policy.

When the September 25, 1932, premium became due the loan and interest amounted to $1869.27. The premium due on that date was paid by a further automatic loan, increasing the total amount to $1913.71. When the December 25, 1932, premium became due the loan was credited with unearned interest which reduced the amount to $1885.39, leaving the face of the policy, less the debt, $3114.61. At that time the cash value of the policy was only $11.36 over the amount of the loan. This sum of $11.36 was insufficient to permit a further charge under the automatic premium lien provision. Under the terms of the policy it was used to purchase $3115 worth of non-participating term insurance for one month, expiring January 25, 1933. The assured died February 21, 1933.

For the period prior to March 25, 1932, the applicable dividends for each policy year were added to the value of the policy. The last dividend so applied was in the sum of $49.55 at the end of the policy year on March 25, 1932. Plaintiff claims that a dividend of $40.75 for the fiscal year ending March 25, 1933, had been declared prior to December 25, 1932, and, therefore, must be applied to the premium due on that date, and, if so applied, would extend the life of the policy beyond the date of the assured's death. She also claims that the period of the extended insurance purchased should begin after the grace period of thirty days, with a like result. Defendant claims that the dividend can be applied to pay a premium only at the end of the policy year and is not available or apportionable at any earlier period. It also claims there is no grace period following a term policy, including those resulting from extended insurance, and that the policy had lapsed. Other questions in controversy will be noticed later on.

To a written interrogatory of the plaintiff as to whether the $40.75, shown by exhibits in a deposition, was the amount allotted to the policy for the year 1932, defendant answered that the amount was the recorded preliminary calculation of a dividend which would have been allotted and became due and payable on March 25, 1933, if, on that date, the assured had been alive and the policy had been in full force and all premiums due had been paid. The paragraph entitled "Tables of minimum loan and surrender values" imposes such limitations. An employee of defendant in charge of the dividend division testified that as notices for premiums due in January must be mailed in December, it is the practice of the board of directors, in October or November, to tentatively apportion dividends for the first three months of the next calendar year. This apportionment is generally approved at the following January meeting for the balance of the calendar year. In apportioning divisible surplus, consideration is given to the fact that certain policies, because of termination as active participating contracts before their policy anniversary dates, will not receive a dividend. Dividends are payable annually on the policy anniversary date if the premiums have been paid in full to that date, but not otherwise, nor any portion thereof. This testimony shows that the tentative apportionment may not be the same as the total of possible dividends, and is made in accordance with the policy limitations. The resolution of the board was not introduced in evidence and defendant was not requested to produce it. It was under no duty to do so. The burden was upon plaintiff to establish her cause of action. If she desired to prove the terms of the resolution she could have done so by the interrogatories or by a notice to produce it. The interrogatory pertaining thereto was fully answered by defendant and there is no testimony that tends to contradict the answer. No unfavorable inference can be drawn from the fact that defendant did not introduce the resolution in evi-

dence. The only testimony in the record shows the action of the board was not a declaration of a dividend, but a mere tentative apportionment subject to later adjustment, applicable only to policies in force at the end of the policy year on which all premiums were paid to that date. We note, here, the provision of the policy that all premiums are payable in advance and that payment of a premium or installment thereof does not maintain the policy in force beyond the date when the next premium or installment is payable. The reason for this provision is apparent. In order to do business and survive, every insurance company must necessarily collect enough money to promptly pay mortuary losses, managerial expenses, rents, taxes and advertising costs, and to make numerous other outlays. To meet these it must depend upon the advance payment of premiums and the income from investments. Because such losses and expenses cannot be known in advance, an approximation is made, and the amount collected is the gross premium charged. For safety this is ordinarily fixed high enough to meet possible emergencies and maintain an adequate reserve. Any surplus of the amount collected is returned to the policy-holders in the proportion that the premiums paid contribute to it. It is evident that distribution must be at fixed periods, in such amount as then determined, and that the amount cannot safely be fixed until the lapse of the period. That method insures a proportionate distribution among the policy-holders. Such so-called dividends are, in reality, not dividends, but in a mutual insurance company, are merely a return to policy-holders of the unearned, that is, unused, portion of the premiums previously paid in. *Rhine* v. *New York Life Ins. Co.* 273 N. Y. 1, 6 N. E. (2d) 74; *United States Life Ins. Co.* v. *Spinks,* 29 Ky. L. 960, 96 S. W. 889; *Home Life Ins. Co.* v. *Stephens,* 190 Ark. 1018, 82 S. W. (2d) 515.

Defendant is a New York corporation. It claims the policy was issued under the statute of that State providing

that dividends be paid only annually, and that full annual premiums must be paid in order to participate in dividends. Plaintiff contends the policy is an Illinois contract not controlled by the New York statute. It is not claimed that the statutes are in conflict or that any provision of the contract contravenes the statute of either State. It is, therefore, unnecessary to discuss these contentions.

Plaintiff calls our attention to the following provision in paragraph (h) pertaining to minimum loan and surrender values: "These values will be increased on account of any dividends which have been allotted and have not been withdrawn in cash up to the date of surrender or loan." She insists that it denotes a time other than the end of each policy year when these dividends will increase the values. The provision manifestly relates only to dividends allotted under the preceding sentence, which limits them to such as are available at the end of complete policy years, provided premiums have been paid in full for such years. It merely provides for adding such annual dividends as have not been withdrawn in cash prior to surrender or loan, and in nowise provides for accelerating the time of distribution. The reason for the provision is that when a policy is issued it cannot be determined whether or not dividends will be withdrawn in cash or applied to the payment of premiums. Obviously, only such dividends as are left with the company can be applied to increase the value of the policy. The sentence relied upon is designed to take care of that situation and nothing more. There is no language anywhere in the policy which makes dividends, or any portion of them, available at any time other than at the end of a policy year. By all the terms of the policy the right to participate in the surplus of the company is limited to the proportion of the divisible surplus ascertained and distributed annually on the twenty-fifth day of March in each year. The four options provided are each confined to a choice of applying one or the other of them at that time. Under the terms

of the contract a policy-holder is not entitled to such dividends in any other manner or time than therein specified. The premium due December 25, 1932, was not paid, and there were no dividends available at that time to pay it. Therefore, by the terms of the policy, it was not entitled to be credited with any part of the dividend claimed to be applicable.

It is a familiar principle that when an insurance policy contains ambiguous provisions, courts will construe them favorably to the insured. In this case there is no such ambiguity and there is no occasion to resort to that principle. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policy-holders, it is equally important to the policy-holders, as well as to the insurer, that definite and clear provisions, upon which the calculations of the company are based, should be maintained unimpaired by loose or ill-considered interpretations. (*Williams* v. *Union Central Life Ins. Co.* 291 U. S. 170, 78 L. ed. 711.) The relation of an insurance company to its policy-holders is purely contractual. The parties here were competent to contract and had the right to insert such lawful provisions in the agreement as they saw fit. It is the duty of the courts to construe and enforce them as made, and not to make a new contract for the parties. *Blume* v. *Pittsburg Life and Trust Co.* 263 Ill. 160; *Keller* v. *North American Life Ins. Co.* 301 id. 198.

In *Keller* v. *North American Life Ins. Co. supra,* past due premium notes were unpaid at the time of the assured's death. The beneficiary claimed the notes were a payment of the premium and gave the policy a loan value, against which the insured could borrow enough to pay the notes, thereby securing automatic extended insurance. In denying the contention we said: "It makes the company furnish the money out of the loan value of the policy with which to pay the note that Keller gave it to create the loan value. By this operation the note provided the means with which

to pay itself, and secured, in addition thereto, $80,000 of insurance. To place such a construction on the transaction * * * would be to defraud the company of its property." In this case the primary end sought is to have the premium paid out of the fund which the premiums, when paid, create, invoking the same principle disapproved in the *Keller case.*

These views are in accord with the majority of the decisions in other jurisdictions under analogous facts and policy provisions. In some of the cases facts of minor importance were somewhat different, but the principles applied were the same. In *Joyner* v. *Jefferson Standard Life Ins. Co.* 53 Fed. (2d) 745 (*certiorari* denied, 286 U. S. 542) the policy provisions were similar to those in this case. The premium was due annually but could be paid quarterly. The anniversary date was March 5. On January 26, 1929, the insured borrowed the full loan value of the policy, paying interest in advance to March 5, 1930. The last premium paid was on March 5, 1929. The assured died August 26, 1929. The policy provided it was entitled to share in dividends only upon the payment of the next succeeding premium. That provision is comparable, in effect, to the provisions in the policy in this case, which require that all premiums be paid in full to the anniversary date on which dividends are calculated. In that case the unearned interest was insufficient to pay the premium. The court held that the dividend could not be taken into consideration for the reason that dividends were payable only upon payment of the next succeeding premium, and that dividends were not payable for any year, or part thereof, for which premiums remained unpaid. The effect of the holding is that dividends are applicable only in the event of compliance with the policy provisions.

In *Pacific Mutual Life Ins. Co.* v. *Turlington,* 140 Va. 748, 125 S. E. 658, it was claimed that the loan values should have been anticipated during the policy year. The terms of the policy requiring a prior payment of three an-

nual premiums as a condition precedent to a loan had not been complied with. After noting the policy requirement the court held the insured had no right to the loan, and said: "To require the company to make this payment to the end that the loan might become available out of which the premium could be paid is to travel in a circle." In the later case of *Atlantic Life Ins. Co.* v. *Bender,* 146 Va. 312, 131 S. E. 806, where a like claim was made the court said: "Dividends and reserve or surrender value cannot be anticipated to pay the premiums, the payment of which is the condition precedent by the very terms of the policies to the creation of the same. Dividends and cash or loan values of life insurance policies do not belong to insurance unless created by statute or granted by the policies, and in the latter instance subject to the terms and conditions contained therein." The same principle,—*i. e.,* that dividends applicable only at fixed periods may not be anticipated at any other time to pay premiums and thereby toll the life of the policy, is found in *McCampbell* v. *New York Life Ins. Co.* 288 Fed. 465, (*certiorari* denied, 262 U. S. 759, 67 L. ed. 1219;) *Rye* v. *New York Life Ins. Co.* 88 Neb. 707, 130 N. W. 434; *Bryant* v. *Mutual Benefit Life Ins. Co.* 109 Fed. 748; *Home Life Ins. Co.* v. *Stephens, supra.*

Plaintiff cites numerous cases which she claims support her contentions. A careful examination of them reveals that, with one exception, they are distinguishable in various material aspects, which it is impracticable to detail here. The cited case nearest in point is *Finley* v. *Massachusetts Life Ins. Co.* 172 La. 477, 134 So. 399. In that case there are some expressions that lend color to plaintiff's claims, but they are contrary to the weight of authority. It also appeared in that case that the insurance company admitted its indebtedness to the insured by virtue of a distribution, and tendered the beneficiary a check for the amount.

On the question whether the extended insurance began at the expiration of the grace period, or at the time the

premium was due, the weight of authority is that it begins when the premium is due, and not at the end of the grace period. (*Talsky* v. *New York Life Ins. Co.* 280 N. Y. S. 69; 244 App. Div. 661; *Life & Casualty Co. of Tennessee* v. *Wheeler*, 265 Ky. 269, 96 S. W. (2d) 753; *Wilkie* v. *New York Life Ins. Co.* 146 N. C. 513, 60 S. E. 427.) Many other cases to the same effect are noted in the opinions. We adopt that view.

The contention that the company was required to notify the assured that the policy had lapsed for non-payment of premiums is without foundation. The requirement of the policy is for notice in case of non-payment of a loan. The policy was not voided for that reason and the requirement has no application to the non-payment of premiums. The policy itself provides that payment of a premium shall not maintain the policy in force beyond the due date of the next premium. The claim that the company waived the policy requirement as to the time of paying premiums is equally without merit. There is no evidence that tends to show the company permitted any premium to be paid after the expiration of the grace period. Nor can plaintiff's claim that other findings of the Appellate Court are mixed questions of law and fact, binding upon us, be upheld. Such matters were either questions of law or questions of fact.

The judgments of the Appellate Court and of the municipal court are reversed and judgment for the defendant is entered in this court.

*Judgments of Appellate and municipal courts reversed.*

*Judgment for defendant entered here.*