MOISE, Justice.
 

 The question herein presented for decision is res nova in Louisiana. There is no controversial issue of fact and the points involved being identical, these suits were consolidated.
 

 Plaintiffs seek to recover from the defendant the full amount of the extended term insurance on three policies on the life of Alfred B. Irion. The Oil Well Supply Company is the assignee of two of these policies and the wife and daughter of the deceased are the beneficiaries under the third policy. The assignee’s policies, which were in effect for a period of 5%ths years, lapsed Jor nonpayment of the quarterly premium due March 30, 1943. The
 
 *775
 
 beneficiaries’ policy, effective for a period of 5% years, lapsed for nonpayment of the quarterly premium on December 30, 1942. At the time of these defaults in the payment of the premiums, there was some indebtedness on the policies. They had a cash surrender value, less the indebtedness at the date of lapse, sufficient •to purchase on assignee’s policies extended insurance to November 16, 1945 and November 17, 1945, and to August 12, 1945 on the beneficiaries’ policies. After the death of the insured on November 22, 1945, the plaintiffs sought to collect the full amount of the extended term insurance. The defendant refused to make payment and plaintiffs filed these suits contending that if the 1942 dividend alleged to be due had been applied to the reduction of the policy loans, the cash value remaining would have been sufficient to purchase additional temporary insurance for a period extending beyond the date of the death of the insured.
 

 The record shows that on June 30, 1937, Alfred B. Irion, the deceased, made application to the defendant company for $25,000 life insurance to be written on the ordinary plan, payable on death to his wife and daughter. There were two supplemental applications, both of which expressly related back to the first and were to be considered part thereof, for additional insurance, one policy for $15,000 and another for $2,500. These two policies were later assigned to the plaintiff Oil Well Supply Company.
 
 In
 
 the application, the assured was given the choice of having the policies dated as of the date of the application or as of the date on which the policies were written. In the application the deceased requested that
 
 the insurance
 
 when issued relate back to and
 
 be effective from the date of the application■, June 30, 1937.
 
 In due course, under date of July 13, 1937, the policies were issued; to take effect as of June 30, 1937 and delivery thereof was made on July 26, 1937, when the first semiannual premiums were paid. After July 30, 1938, by agreement, the premiums on the policies were payable quarterly. The policies lapsed for nonpayment of the premiums, assignee’s on March 30, 1943 and the beneficiaries’ on December 30, 1942, and the policies were converted into nonparticipating term insurance for the face amount thereof less the amount of the loans thereon.
 

 The policies of the defendant mutual insurance company provide for an annual participation in the company’s divisible surplus, by way of dividend payments. On the anniversary date of the policies for the years 1939, 1940, 1941 and 1942, dividends were applied toward payment of quarterly premiums or left at interest. Apportionment of the distributable surplus for the year 1943 was authorized by the defendant’s board of directors, first, tentatively by a resolution adopted December 16, 1942, fixing approximately $32,000,000 as the amount of the surplus to be distributed
 
 *777
 
 during the year 1943, and then specifically by a resolution of January 20, 1943, which determined the distributable surplus to be 132,087,840. Both of these resolutions authorized distribution of this surplus
 
 "to those policies which participate annually in surplus, on their anniversaries in 1943, provided premiums shall have been paid in full to such anniversaries and the policies are then m full force."
 
 (Italics ours.) No portion of the surplus distributed by the company during the year 1943 was allocated to these policies. However, it was admitted, if the policies had been entitled to the 1943 dividend, such dividend would have been sufficient as to each policy to have provided extended insurance to a date subsequent to the insured’s death.
 

 In asserting their alleged claims against the company, plaintiffs contend: (1) That since the insured was paying a semiannual premium, and since the insurance did not take effect until the policies were delivered and the first premium paid (July 26, 1937), accordingly two of the policies did not lapse until 5%th.s years thereafter or on April 26, 1943, and the other until 5% years thereafter, or on January 26, 1943; that there is ambiguity by reason of the wording of the application and the policy, and that an interpretation must be made in favor of the insured; that predating the policies as requested by the insured constitutes a forbidden discrimination against the insured because he paid a full six months premium for the period beginning with the effective date of the policy and ending December 30, 1937, and therefore did not get six months’ coverage for the six months’ premium; (2) That because these policies were in effect during the whole of the calendar year 1942, the company was obligated to distribute to them a part of the surplus which the directors on December 31, 1942 found could be distributed, notwithstanding that the policies had lapsed for failure of the policyholders to pay the full premiums for the policy year current on December 31, 1942, and despite the further fact that the resolution of the board of directors declaring the dividend, apportioned no part thereof to such lapsed policies.
 

 The defendant argues that the policies were antedated June 30, 1937, at the written request of the insured, as shown in his application; that the policies ceased to exist as participating policies prior to their anniversary date on June 30, 1943, and no portion of the divisible surplus distributable during the year 1943 was due or allocable to these policies because the premiums thereon for the policy year current upon the 30th day of December, 1942, had not been completed. Act No. 88 of 1906, § 1.
 

 In the district court, judgment was rendered in favor of the plaintiffs. In written reasons, the district judge declared that the effective date of the insurance was June 30, 1937, as stipulated in the policies themselves, and not July 26, 1937 (the date of delivery of the policies) ; but that
 
 *779
 
 the policies were entitled to share in the distribution of surplus during the year 1943, notwithstanding the nonpayment of the premium for the policy year current on December 31, 1942. The defendant appealed.
 

 There are two questions of law to be decided :
 

 (1) What was the effective date of the policies?
 

 (2) Were these policies entitled to participate in the apportionment of the 1943 dividend ?
 

 We will first consider plaintiffs’ contention that where there is ambiguity in a policy as to the effective date of the insurance, or a conflict between the provisions of the application and the provisions on the face of the policy, the policy should be construed against the insurer and in favor of the insured.
 

 The provisions of the application dealing with the effective date of the insurance are as follows: “It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid * * *; provided, however, that if the applicant, at the time of making this application, pays the soliciting agent in cash the full amount of the first premium for the insurance applied for * * *, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, * *
 

 Insofar as the insured was given a choice with reference to the date of the policy, the application shows (sic) :
 

 Date Policy
 
 r
 
 date of this application as of J
 

 l * “**-
 

 The pertinent provisions of the policy read:
 

 “This policy shall take effect as of the Thirtieth day of June Nineteen Hundred and thirty-seven, which day is the anniversary of the Policy.
 

 * * * * jfc ‡
 

 “This .contract is made in consideration of the application therefor and of the payment in advance of the sum of $* * *, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this Policy for the period terminating on the Thirtieth day of December Nineteen Hundred and thirty-seven, and of a like sum on said date and every six calendar months thereafter during the lifetime of the Insured.”
 

 An insurance policy is a contract between the insurer and the insured, and the courts are bound to give legal effect to it according to the intent of the parties, the intent to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. Art 1945, R.C.C.
 

 
 *781
 
 The record is conclusive that the consent to antedate the contract was legally given, as shown by the. above quoted provisions of the application.
 

 Article 1901 of the Revised Civil Code provides: “Agreements legally entered into have the effect of laws on those who have formed them. * * * ”
 

 It is a principle of law that if an insurance policy contains ambiguous provisions, courts will construe them favorably to the insured, but to invoke this principle there must be ambiguity and some doubt as to the agreement of the parties. Here the policy provisions are certain, definite and clear. It is equally important to the policyholders and the company that definite and clear provisions should not be impaired by any loose or ill-considered interpretations. See Coons v. Home Life Ins. Co, of New York, 368 Ill. 231, 13 N.E.2d 482.
 

 The general rule stated in 29 American Jurisprudence, under “Insurance”, Sec. 390 is: “Where a policy is antedated at the request of the insured, the agreement is binding on both parties and the premuim periods begin on the date so inserted although the policy is not delivered until a later date.”
 

 We have two recent decisions, Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075 and Hemel v. State Farm Mutual Auto Insurance Company, 211 La. 95, 29 So.2d 483, where it has been pointed out that an insurance policy like any other contract is the law between the parties and the court is not ordinarily at liberty to depart from its terms. When the intent of the parties is evident on the terms of the contract there is nothing for the court to construe and the policy must be given a reasonable interpretation consonant with apparent objects and plain intents of the parties.
 

 An applicant has the choice of paying the first premium at the time he submits the application, in which event, if the application be approved, the insurance becomes effective from that date; so that if the applicant were to die before the policy is actually delivered, the beneficiary would nevertheless receive the full amount of the policy. Mr. Irion preferred not to pay the premium at the time of making the application and desired the earlier dating, the date of the application. When Mr. Irion received each policy, he understood that in accordance with the wish he had expressed in his application, the insurance had been made effective as of
 
 June 30, 1937
 
 and the first premium which he paid was for the period terminating December 30, 1937. He likewise understood that similar payments were'to be made by him on the 30th day of June and the 30th day of December each year thereafter during his lifetime. The indisputable facts are that he was given the choice of an effective date, that he exercised his choice, and that when he
 
 *783
 
 subsequently received the policy which plainly provided that June 30th was the anniversary date and that the policy became effective as of that date and that the first premium covered only the period ending December 30, 1937, he not only accepted the policy but continued thereafter to pay premiums on the basis of his original choice of an anniversary date.
 

 There are some things in law and in fact which are self-evident and others which are proven by the senses. All that we can observe by the organs of the senses, all that we accept by precedent and authority, all that we perceive by the operation of the human understanding, and all that we consider in retrospect or contemplate at the present or in the future, may be compounded or decomposed in the intellectual laboratory of our jurisprudence that the contract of the parties is the law of the case and, hence, we say that the judgment of the district court in fixing the anniversary date of this contract as June 30, 1937 is affirmed and this anniversary date must be used herein for all purposes.
 

 Plaintiffs further contend that because these policies were in effect during the whole of the calendar year 1942, the company was obligated to distribute to them a part of the surplus which the directors on December 31, 1942 found could be distributed, notwithstanding that the policies had lapsed for failure to pay the full premiums for the policy year current on December 31, 1942, and notwithstanding the further fact that the resolution of the board of directors, declaring the dividend, apportioned no part thereof to such lapsed policies.
 

 Further pertinent provisions of the policies are:
 

 “The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Beginning at the end of the second insurance year, and on each anniversary thereafter, such surplus as shall have been apportioned by the company to this policy, shall at the option of the insured, be either * * (Here is listed various options as to method of disposition of the dividend which insured may make.)
 

 “If no option is selected, the dividend will be applied to the purchase of a dividend addition to the sum insured. The Insured may surrender any dividend addition for cash at any time not later than three months after any default in payment of premium, and the cash value thereof shall never be less than the original cash dividend.”
 

 Plaintiffs’ second contention is that where a policy is in full force and effect for the calendar year during which the dividend is earned, and the dividend is apportioned, the policy is entitled to be credited therewith.
 

 Act No. 88 of 1906, § 1, Dart’s Stats. Sec. 4104, requires life insurance companies to provide in every policy: “ * * * that the proportion of the surplus accruing upon said policy
 
 shall be ascertained and distributed annually and not otherwise.
 
 
 *785
 
 Upon the thirty-first day of December of each year, or as soon thereafter as may be practicable, every such corporation shall well and truly ascertain the surplus earned by such corporation during said year. After setting aside from such surplus such sums as may be required for the payment of authorized dividends upon the capital stock, if any, and such sums as may properly be held for account of existing deferred dividend policies and for a reasonable contingency reserve, every such corporation shall apportion the remaining surplus equitably to all other policies entitled to share therein. * * * The dividends declared as aforesaid * * * shall be payable respectively either upon the anniversary of the policy next after said thirty-first day of December or upon a day certain in the year following said date, according to the rules of the corporation or the terms of the policy, and upon the sole condition that the premium payments for the policy year current upon said thirty-first day of December shall have been completed. * *
 

 Under the provisions of this statute, the board of directors of the company was required to determine on the 31st day of December, 1942, or as soon thereafter as might be praticable, how large a sum it could safely distribute during 1943 to its policyholders. Two resolutions were passed by the company, one being tentative, the other definitive. Both dealt with the distribution of surplus during the calendar year 1943 and authorized payments during 1943 only to those policies on which the premiums had been paid in full to the 1943 anniversary date. The first resolution of the board of directors, on December 16, 1942, provided: “Resolved, that the Board of Directors hereby finds that the divisible surplus of the company as of December 31, 1942, will be approximately $32,000,000.00 (net of reinsurance in domestic companies), and, in the absence of any further action by this Board on or before that date, hereby authorizes the officers of the Company to pay dividends on policies with anniversary dates falling due in the year 1943 at rates determined on the basis outlined in the Actuaries’ memorandum to the President, dated December 4, 1942, provided that in each case premiums shall have been paid in full to such anniversary date and the policy shall then be in full force; and to prepare and send out dividend notices for the year 1943 in accordance with' this authorization; it being estimated that the aggregate amount of such dividends will approximate the sum of $32,000,000.00 (net of reinsurance in domestic companies).”
 

 The second resolution of January 20, 1943, determined exactly the amount which could be distributed to the policyholders whose premiums were paid in full on their anniversaries in 1943. This apportionment having been made — this specific sum having been set aside for distribution — payment to all policies included therein was required by the statute to be made on the sole condition that the
 
 premium payments on such policies for the pol
 
 
 *787
 

 icy year current on December 31, 1942
 
 should be completed. No dividends were paid on these policies because the premium payments for the policy year current on December 31, 1942 were not completed and the policies were thus
 
 not
 
 brought into the class to which dividends during 1943 were entitled. A definite date must necessarily be fixed for determination of surplus, but on that date policies are not all on a par as to premium payment for the current full insurance year. Premiums are payable in advance. Therefore, some policies have contributed a full year’s premium. The policies involved here had not. The statute provides that all must be on the basis of a full year’s premium payment. The policy year of these policies which was current on December 31, 1942 is the policy year which began June 30, 1942 and ended June 30, 1943. The insurer was bound under the terms of the general resolution of its Board of Directors and under the mandate of the Louisiana Statutes to apply to these policies the same rule, the same formula and the same procedure by which it measured the rights of every other policyholder similarly situated, which means that the insurer could not have paid a dividend on these policies during the year 1943 without violating the terms of the statutes forbidding discrimination.
 

 The law under which the policy was written governs the rights of the parties and an insurance policy like any other contract is written and must be construed in compliance with the law existing at the time of its confection. Johnson v. Anderson-Dunham Concrete Co., 212 La. 276, 31 So.2d 797, and authorites therein cited.
 

 The question under discussion has been decided on numerous occasions in the federal courts and in courts of other states, and the weight of the jurisprudence supports the position taken by the defendant that a condition such as was imposed by the resolution of the board of directors of the company in this case is valid and fair. Coons v. Home Life Ins. Co. of New York, 368 Ill. 231, 13 N.E.2d 482; Menin v. New York Life Ins. Co., 188 Misc. 870, 69 N.Y.S.2d 523; Fenster v. New York Life Ins. Co., 188 Misc. 909, 66 N.Y.S.2d 871, affirmed 272 App.Div. 879, 72 N.Y.S.2d 404; Joyner v. Jefferson Standard Life Insurance Co., 5 Cir., 53 F.2d 745, certiorari denied 286 U.S. 542, 52 S.Ct. 498, 76 L.Ed. 1279; Ward v. Prudential Life Ins. Co. of America, Mo.App., 105 S.W.2d 983.
 

 The case of Finley v. Massachusetts Mut. Life Ins. Co. 172 La. 477, 134 So. 399, 400, upon which the district court based its finding for the plaintiffs, without analysis appears to sustain the contention of the plaintiffs with respect to the 1943 dividend. But the factual situation in that case was different, and the district judge recognized this when he said: “ * * * it is true that the insured there had completed the payment of premiums for the current policy year, but lapsed his policy in the subsequent policy year * * In the Finley case the divisible surplus earned dur
 
 *789
 
 ing 1926, to be paid as dividends for the year 1927, was not ascertained and declared by resolution until January 25, 1928 and distribution was to be made “to policyholders during the twelve months beginning with June, 1928, and ending with May, 1929”. The anniversary date of -the Finley policy was March 9th of each year. Mr. Finley’s policy lapsed in December, 1928. (He died on April 30, 1929). It is therefore clear that his premiums had been paid during the policy years 1926-1927, and 1927-1928. This is an all-important consideration, and the fact that the premiums for the “current policy year”
 
 had
 
 been paid in full in the Finley case was the basis for the statement by this court that “The defendant company became a debtor to each and every one of its policyholders the moment the resolution providing for the distribution of the surplus became effective in an amount ascertained by the actuary.”
 

 The doctrine of reasonable certainty must be applied in law and in fact. The application of this rule should be sought assiduously and should be the foundation for all judgments. However, in the pursuit of this objective we should not make it fit a preconceived theory but should see that the theory confo'ms to it.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside and it is now ordered that plaintiffs’ suits be dismissed at their costs.
 

 HAMITER, J., dissents and assigns written reasons.
 

 PONDER, J., absent.