CULPEPPER, Judge.
This is a suit for declaratory judgment. Plaintiff, The Home Insurance Company (hereinafter The Home), alleges that it issued to defendant, Louis Records & Associates, Inc., a comprehensive general liability policy covering certain aspects of that corporation’s involvement in workover operations at the United States Department of Energy West Hackberry Complex in Cameron, Louisiana. It further alleged that it was understood between the parties to the insurance contract that professional liability coverage was to be excluded from the general liability policy. A binder was issued to afford coverage to the defendant effective August 1,1978, and the following exclusionary endorsement was later added to the policy:
“It is agreed that this insurance does not apply to bodily injury or property damage arising out of the rendering of or the failure to render any professional services by or for the named insured, including:
(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and
(2) supervisory, inspection or engineering services.”
The plaintiff further alleged the defendant, Louis Records & Associates, has been named as defendant in various suits arising from an explosion and fire which occurred at the Hackberry Complex on September 21, 1978, and that the allegations of negligence in these suits, insofar as they pertain to Louis Records & Associates (hereinafter LRA), clearly fall within the binder’s exclusion of professional liability, as well as within the terms of the above written exclusion subsequently issued by the plaintiff.
The Home seeks a declaratory judgment against LRA and all plaintiffs in the suits for damages arising from the explosion and fire, that its comprehensive general liability policy does not afford coverage to LRA with reference to the pending lawsuits, and that The Home is not required to defend LRA in these suits. Parsons-Gilbane, general contractor for the project and an additional insured under the policy, and Gulf Interstate Engineering Company, another defendant and/or third party defendant in the damage suits, intervened in the declaratory judgment suit to assert their rights under the policy.
*1270 After the taking of certain depositions, the defendant LRA and intervenors Parsons-Gilbane and Gulf Interstate Engineering Company filed a motion for summary judgment supported by affidavits and the depositions of Louis Records, employee of the defendant LRA, and Howard Cornay and Fred Sommers, employees of the insurance agency which placed the subject insurance policy. The Home filed a cross-motion for summary judgment in its favor, and both motions were submitted for consideration at the same time. The trial court granted the motion for summary judgment in favor of defendants and against the plaintiff. Plaintiff appeals.
The issue is whether or not the trial court erred in holding that the defendants were entitled to summary judgment.
FACTS
The following are the facts adduced from the affidavits, depositions and other documents introduced in support of the motion for summary judgment. The STRATEGIC PETROLEUM RESERVE PROJECT was initiated by the United States Department of Energy in the latter part of the 1970s in an effort to stockpile petroleum reserves. Part of the project involved the stockpiling of reserves in the West Hackberry salt dome in Cameron Parish. The Department of Energy (DOE) contracted with Parsons-Gilbane to function as drilling manager for the project. Parsons-Gilbane subsequently negotiated with LRA a subcontract for Management Drilling Inspection Services, which entailed various duties of inspection and supervision with regard to work done on rigs by other subcontractors, as well as coordination of such work. Under the contract, LRA was to procure the liability insurance necessary to cover its operations at the West Hackberry site. Louis Records of LRA requested Mr. Howard Cornay, an agent with Harlan Insurance Agency, through whom Louis Records had obtained insurance for several years, to accompany him to a meeting with Parsons-Gilbane during the course of the subcontract negotiations, so that Mr. Cornay would be familiar with the insurance requirements and could procure insurance which would cover LRA’s operations. Mr. Cornay then had his associate, Mr. Fred Sommers, contact various insurance underwriters, inform them of the activities for which insurance was required, and request quotations as to the premium for such a policy from each. Bids were received, and the coverage for the project was placed with The Home in the form of three basic policies — automobile liability, workers’ compensation, and comprehensive general liability.
A written binder was issued by Mr. Cor-nay’s office with an effective date of August 1, 1978, binding The Home to insure LRA according to the terms and conditions of the policy and endorsements to be subsequently issued. The binder does not expressly state whether or not architects and engineers errors and omissions coverage is excluded. It states only that the binder “. .. is subject to the terms and conditions of policies and endorsements to be issued.."
The advisability and feasibility of procuring what is known in the insurance trade as architects and engineers errors and omissions insurance was discussed by Mr. Records and Mr. Cornay in terms of insurance for liability of a professional engineer for mistakes in professional judgments and decision-making, akin to medical malpractice insurance for physicians. It was decided that such was unnecessary and Mr. Records understood that liability for errors of a professional engineer would not be covered by The Home policy.
The accident occurred on September 21, 1978, while the binder was still in effect but before the policy issued. Pelican Well Service, a subcontractor, was replacing casing in Well # 6 Cavern 6 during a workover job. LRA had prepared the plan for this particular well. In addition, LRA’s representative, Mr. Irbie Hogue, was supervising the workover job. Hogue is not a professional engineer. He had learned his trade through experience. The well had several million barrels of oil in it, and there was pressure in the hole. To remove the casing *1271 they first inserted mud to “kill” the well. The next step was to insert a packer in the hole. The valve on the wellhead was not a full two inches, so it was necessary to use a smaller packer which would pass through the valve and still expand properly in the hole. The decision to use a particular packer was suggested by LRA representatives on the job and approved by Louis Records, who is a licensed professional engineer. A representative of the manufacturer of the packer came to the jobsite to supervise its installation. After the packer was installed and they were removing the casing from the hole, the packer failed to hold the pressure, and the well blew out. The exact cause of the packer failure is not known.
Four days after the accident, the policy issued on September 29, 1978. The initial policy did not contain the exclusion clause at issue. The Home contends this was due to a clerical error. On October 30, 1978, The Home issued an endorsement to the policy containing the exclusion upon which is based the denial of coverage, for the claimed purpose of correcting the policy to conform with the terms originally intended. It was sent to the insured, but Louis Records stated that no one ever requested that he sign it to signify the insured’s agreement to the change. Over a year after the accident and after the several damage suits arising therefrom had been filed against LRA, Parsons-Gilbane, and other defendants, The Home informed Mr. Records that it was denying coverage on the basis of the professional liability exclusion. Thereafter The Home filed this suit.
The decisive issue is whether there is a genuine issue of material fact remaining after a consideration of the evidence introduced in support of the motion for summary judgment.
SUMMARY JUDGMENT
The standard for determining the propriety of granting a motion for summary judgment was set out in Chaisson v. Domingue, 372 So.2d 1225 (La.1979), where the Louisiana Supreme Court stated:
“It is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Employers’ Surplus Line Ins. Co. v. City of Baton Rouge, 362 So.2d 561 (La.1978); Andrew Development Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977); Morgan v. Matlack, Inc., 342 So.2d 167 (La.1977); Stallings v. W. H. Kennedy & Son, Inc., 332 So.2d 787 (La.1976). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Employers’ Surplus Line Ins. Co. v. City of Baton Rouge, supra; Andrew Development Corp. v. West Esplanade Corp., supra; Morgan v. Matlack, Inc., supra; Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976). The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts. Employers’ Surplus Line Ins. Co. v. City of Baton Rouge, supra; Andrew Development Corp. v. West Esplanade Corp., supra; Morgan v. Matlack, Inc., supra; Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963).”
 The defendants in the present case argue that since The Home introduced no counter-affidavits or other evidence, there is no genuine issue as to material fact. This contention was answered in the recent case of Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980), in which the court held that the mover for summary judgment is not entitled to judgment on the sole basis that the opposing party has failed to respond to the motion by providing some evidence of the existence of a genuine issue. The court holds, under LSA-C.C.P. Article 967, that the burden is on the mover for *1272 summary judgment to prove that there are no genuine issues of material fact, and only if the mover’s evidence is sufficient does the burden shift to the opposing party to present evidence showing that material facts are still at issue.
The rule is well established that since an insurance policy is a contract between the insured and the insurer, it is to be given effect according to the intent of the parties. Oil Well Supply Company v. New York Life Insurance Company, 214 La. 772, 38 So.2d 777 (1949). Therefore, resolution of the issue of coverage in the instant case depends first upon whether the parties intended the exclusion clause at issue would be included in the policy or endorsements. Then, if the parties did intend the exclusion be included, there must be a determination as to whether LRA’s potential liability in connection with the Hackberry casualty falls within the exclusion.
Plaintiff-appellant contends there are genuine issues of material facts as to both these questions, despite the evidence introduced by the defendants in support of their motion.
Defendant contends their evidence proves that the subject exclusion was not intended by the parties to be in the policy or endorsements. Louis Records admits he intended the policy would exclude architects and engineers errors and omissions, but he contends he did not intend the exclusion clause would be as broad as the one ultimately placed in the endorsement. Moreover, LRA contends its activities in connection with the casualty do not fall within the exclusion, even if it was intended.
As to the intention of the parties regarding the exclusion clause, the evidence presented by the movant shows only the intention of the insured, not the intention of the insurer. Howard Cornay, the agent who placed the insurance, testified that he was a salaried employee of the Harlan Agency, Inc., which was independent of, unrelated to and uncontrolled by any underwriter or insurance company. Harlan’s agency contract with The Home gave its employees limited authority to bind The Home on specific coverages, subject to The Home’s approval. This evidence is important in determining whether Cornay was an agent of The Home.
“There is a distinction between insurance agents who are employed by an insurance company to solicit risks and effect insurance for that company, and insurance brokers, who solicit insurance from the public generally, under no employment from any special company, placing the insurance with any company selected by the insured or, failing such selection, by the broker himself. In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance.” Karam v. St. Paul Fire & Marine Insurance Company, 265 So.2d 821 (La.App. 3rd Cir. 1972), affirmed 281 So.2d 728 (La.1973).
This court further stated in Karam that “(t)he fundamental distinction in the legal result is that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one acting as the agent of the insured, or as a broker, are not,” quoting from Appelman, Insurance Law & Practice, Section 8725.
Inasmuch as the facts as testified to by Mr. Cornay show that he was not an agent of The Home, proof of his acts and intentions does not suffice to show The Home’s intentions with regard to what was or was not intended to be covered by the policy. Cornay’s testimony that he understood the policy would cover the actions of LRA’s executive supervisors (like Irbie Ho-gue) is not binding on The Home. Nor does the vague testimony of Cornay’s associate, Mr. Fred Sommers, that he fully informed The Home’s special agents of the insurance requirements of LRA on this job, but could not remember exactly what he told them, suffice to prove that The Home intended coverage of a casualty such as the instant one. Thus, there are genuine issues of material fact as to the nature of the exclusion clause which the parties intended would be included in the policy or endorsements.
*1273 Even assuming that the exclusion clause contained in the endorsement was intended by both parties, there are fact issues as to whether the activities being performed by LRA at the time of the casualty are excluded. The defendants argue on appeal that LRA was not performing professional services at the time of the casualty because its on site foreman, Irbie Hogue, was not a professional engineer. Secondly, appellees contend the decision to use this particular packer was not a professional engineer decision, but was merely administrative. However, the evidence shows that the plans for this particular job were prepared by LRA, that it was Supervising the job, and that the specific packer which failed was approved by Lewis Records, a professional engineer. Clearly, there are genuine issues of material fact which are material to the question of whether these planning and supervising activities by LRA fall within the exclusion.
As stated above, the evidence does not prove the cause of the packer failure. It could be that the decision to use this particular packer was the negligence that caused the blowout. It could be that the packer itself was defective. Without a trial on the merits, we can only speculate as to the cause of the packer failure. In order to determine whether the activities of LRA in connection with the packer are excluded under the clause in question, a trial on the merits will be required to determine the cause of the packer failure.
In conclusion, we are convinced that the present case is inappropriate for summary judgment. There are several genuine issues of material fact, including those mentioned above, which must be decided in a trial on the merits.
Defendants also contend that application of the exclusion is precluded by LRA-R.S. 22:628, which provides that no agreement modifying a contract of insurance is valid unless in writing and made a part of the contract. This argument is based on the evidence that the policy as originally issued did not contain the exclusion clause. The exclusion was placed in an endorsement issued the next day after the policy issued. As stated above, The Home contends this was the result of a clerical error, and that, in any event, they had a right to seek reformation of the policy to conform with the true intent of the parties. In our view, these contentions show additional reasons why this case is inappropriate for summary judgment. There are fact issues regarding the true intent of the parties, and perhaps also as to whether the failure of The Home to include the exclusion in the policy as originally issued was merely a clerical error.
For the foregoing reasons, the judgment appealed is reversed and set aside. This ease is remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against defendants-appellants.
REVERSED AND REMANDED.